The next case is 2011-1119, INRI SP CONTROLS. Is it Mr. Durgosz? Durgosz. Durgosz. Please proceed whenever you're ready. May it please the court, my name is Michael Durgosz and I represent the patent owner, SP Control in an appeal from a final rejection affirmed by the Board of Appeals at the Patent Office. And this appeal turns on the application of the broadest reasonable interpretation standard in a re-examination. So the parties agree that however we decide that issue determines the rejection? Clearly. And so there's two limitations at issue in the appeal. One has to do with slots for receiving labels. And it's been in the patent owner's position that that claim limitation says that it's slots for receiving labels only and not other things. The Patent Office takes a contrary view. The other limitation has to do with the mounting of the labels in the slots. And the patent claim itself says that the labels are mounted over the slots. The patent owner takes the position that that should be construed to say mounted so as to cover the slots. The Patent Office takes a position that the claim should be interpreted more broadly. If either of the patent owner's claim constructions are adopted as the proper construction, then the final rejection as obvious would go away. So if either one is adopted or both are adopted, then the claim doesn't read on the prior art cited by the examiner. So you concede the standard is the broadest reasonable interpretation. I do. I do. So your argument comes down to the fact what? That this was the board's or the examiner's view was unreasonable. That's correct. And it's unreasonable because? Because the specification of the patent, which has to be considered as part of that broadest reasonable interpretation, only discloses an embodiment in which the slot receives labels and labels only. Yeah, but even in a regular claim construction where we're not confined to the broadest reasonable interpretation, this court's case law indicates that we're reluctant to limit the meaning of a claim to just the preferred or the disclosed embodiment, right? That's correct. So why is the board wrong here by construing broadest reasonable interpretation to not be limited to the embodiment disclosed? Well, first of all, the basis for the board's interpretation appears to be the prior art and not the patent and not the intrinsic evidence. They're relying upon the art that was cited in the reexamination request to construct the claims, and I submit that that's not appropriate. Second of all, when they do construe the claims in the way that they have, there are inconsistencies that make those constructions unreasonable. So the place to start with this analysis is, the prior art that they're talking about is a key that goes through a slot, and that on the top of the key you can take the face off, place a label underneath the top of the key surface, and then place that cap back on the key. And so the place where they start that construction is in the limitation, labels mounted over the slots. And they say that that limitation would include that something, the labels are mounted on top of the slots, and therefore if the label is on the top surface of the key, it's in a plane that's on top of the slot through which the key is passed. The next limitation that is an issue is the position of the slots. The limitation D says that the slots are positioned between the light sources and the keys. And in their appellee's brief, the patent office took the position that between means in the space separating. And so if the slot is positioned between the light sources and the keys, and the keys are in the slot, there is no space separating the key from the slot. So I submit that if you put the key in the slot, then there can't be a between location between the slot and the key. Well, one thing that caused me some pause was whether or not your figure three shows between, given that the key is located below and they aren't even in the same plane. So it made it difficult for me to find a normal construction of the word between that would cover the only disclosed embodiment in the patent. Something that I've thought of. In my reply brief at page seven, there's a diagram which shows how the key and the light source and the slot are arranged in that configuration. Normally we would think of page seven of the gray brief. So normally we would think of drawing a straight line between light source and key and the slot would be in the middle. But I would submit that that's still a between. I'm a little confused. Under the appellee's proposed configuration, the light source is behind the frame shining through the slot to the key, right? Yes, yes. The prior art device has transparent plastic structures. So the light source is behind the key and the label is also transparent so it shines all the way through. The place that I thought this between caused some problems for the patent office's interpretation is at page 17 of the red brief where the patent office says that limitation D requires a sequential configuration starting from the back and going to the front. What the patent office said was that the limitation that talks about the slot being between the light source and the key requires that there be a light source, a label, and then a key. The prior art structure that they're talking about is a light source, a key, and a label on the top of the key. So I don't see how this interpretation, this limitation, supports their position. The other thing that the patent office says is that claim one says nothing about how... Just so I'm understanding the technology right, the label is not entirely over the key, is it? I mean, isn't the key sort of a bump and that bump part doesn't have a label on top of it? Well, in the prior art, which is... Doesn't the key protrude beyond where the label is? In the patent or in the prior art? In the patent, the way that the device is configured is that the label is in a slot above where the key is below. And so that the label reads what the device is that is represented by the button. To figure out how to construe the claims and to the extent that we're talking about between, I understand the PTO's construction to allow for a situation where the key sits not below, like in your disclosure, but at the same point and the key would then extend beyond the label. Is that right? If you look at the page opposite, page six of the PTO's brief, there's a figure there that will help answer that question, I believe. And this is from Extron? I believe that this is the Extron device, yes. And so there's a front panel to the prior art devices and the keys bulge out from the front panel. And the label would be on the face of the key that's extended away from the front panel. Okay. So, do you understand the configuration? I do, I do. Thank you, Gerber. What I think is inappropriate about the way that this claim was construed is that the patent office looked at the dictionary definition of, for example, mounted over, and found that it was susceptible to two or three different definitions from the dictionary. And went to the specification and found that... But you agree with that. You don't dispute that. No, I don't dispute that at all. You say the clear ordinary meaning of this term would allow for three alternative definitions, right? That's correct. That's correct. But I think what is going on here is that in addition to situations where there's manifest exclusion, expressed as a vowel, the law, the NPEP, and your cases all support the notion that you can have a definition by implication. And I would submit that reading the specification here, in which the only way in which the labels and the slots are arranged is a single way. There is no alternative of how the labels are arranged. It's a definition by implication. The claim itself, though, don't we have to start with the claim to see if there's anything in there that dictates a particular mode being excluded? And actually the claim itself says nothing about the position of the keys. Yes, it does, Your Honor. And that's another point that I wanted to make about the Patent Office's analysis. It doesn't say anything about it vis-à-vis the slot, though. Well, I wouldn't go all that far. At page 19 of the Patent Office's brief, they say, Claim 1 says nothing about how the keys are placed in the claimed apparatus. That's incorrect. Claim 1 has two different places where it says something about the keys. The first one is in Limitation D, where it says that the keys are mounted to the frame. It doesn't explain the exact structure, but it does say that the keys are mounted to the frame. The second thing it says in the B limitation is that the keys are coupled to the control circuitry. So it's not dangling in the air. There are anchors. Well, no, I understand, and you're correct in what you're pointing to, but there's nothing in here that… The only respect in which slots come up in the claim is with respect to the placement of labels. There's no discussion of slots vis-à-vis the placement of keys in the claim. That's correct. But it says that the slots are for receiving labels. Yeah, I'm just talking about the keys. So, you know, it's kind of… There's no command in the claim with respect to the keys. But the place that I think goes back to this point about slot for receiving labels is under the proposed or the claim construction affirmed by the board, I don't understand how the slots receive labels in that prior art device. The keys are protruding through the slot. According to this figure in their brief, the labels are put on after the keys are placed through the frame. So at what point in time are the labels received by the slots? In this design, the labels are received by the keys. The keys are received by the slots. But the label isn't on the key when it goes through the slot. So I don't understand how that device, that structure, can meet the limitation, slots for receiving labels. Regardless of whether it's labels only or keys also, I don't understand how that limitation is met. The… Counsel, you're into your rebuttal time. It's up to you if you want to save it. No, I'll save it. May it please the court. Claim 1 recites keys, it recites labels, and it recites one slot. The board here has taken the plain language of the claim and said based on what you're telling us through this claim, it contemplates an invention wherein you have a slot that's used for both the key and the label. I understand appellant wants to limit this claim to an embodiment where we have two slots, one for the key, one for the label. The problem is this claim does not communicate that kind of scope. And there hasn't been a kind of clear expressed disavowal of any other particular embodiment such that we can say with some kind of conclusion that… Would we be in a different position, do you think, Mr. Mance, if we were talking here about an appeal from a typical claim construction case in the district court? Because when you look at the specification, in particular figure 3 and some of the descriptions in the spec, the written description, there does seem to be a clear contemplation of separate slots for labels and keys. To be sure, there is a preferred embodiment in which figure 3 depicts that kind of orientation where you have a slot for label that's above the slot for the key. I think the fact that this is coming from the PTO does change the dynamic. Why? Because unlike a district court where we're left with a static record, the claim is what the claim is and the spec is what the spec is and we're maybe trying to marry the two or trying to understand the two. Here, to the extent that there's some disconnect between the claim and the embodiment and the applicant or the patentee wants to limit himself to that embodiment, he should make it express in the claim. I guess what you're saying is that there's nothing in the claim and although the specification does reflect this preferred embodiment that we were discussing a minute ago, there's nothing in the specification which limits the claim to that embodiment. That's correct, Your Honor. I mean, that has to be your argument. That's correct, Your Honor, because we agree there clearly is an embodiment that reflects the construction he wants to give this claim. The problem here is we have a patentee that has said right before he launches into his claims, don't limit me to my embodiments. And then he writes a claim in which he doesn't graft himself to a particular embodiment. So it's exactly that type of scenario where the broadest reasonable construction standard says, okay, I understand what you're telling me you wanted to do. The problem is you didn't do that. So if you want to limit yourself to an embodiment of separate slots for keys and labels, put it in the claim. But in fact, and just to close, really you say it's the preferred embodiment, but the situation of separate slots for labels and keys seems to be the only embodiment, isn't it? Not so, Your Honor. In fact, one of the reasons why the board's construction is reasonable is, for example, if we looked in the abstract, and in fact in the context describing the preferred embodiment, he simply describes keys and labels, says nothing about separate slots for them. He says there are keys and labels, but he doesn't say, he doesn't even talk about slots there. No, but I'm saying where slots are discussed. No, you're correct on that. But where slots are discussed, the only embodiment, let alone preferred embodiment, seems to be separate slots for labels and keys, doesn't it? That is true. There are certainly instances in the spec where the written description that discuss embodiments that talk about keys but no slots. The particular preferred embodiment, which does take up the bulk of the spec admittedly, does talk about slot for label, slot for key. Although I'll grant you you're correct that there's no disclaimer in the spec. Correct. My point is it looks like every embodiment in the spec, preferred or just mentioned, where slots are mentioned, contemplates separate slots for labels and keys. But at the same time, I recognize, as you say, there's no disclaimer. Right, and we do, there's a number of sort of problematic. It's kind of an interesting case in that regard. It is, and it's problematic from the perspective of what applicant wants this court to do or patentee wants this court to do. Because, again, I can see the preferred embodiment. What about Mr., I'm sorry for jumping in on you, but I wanted to, before I finish with what I wanted to ask, a point that opposing counsel picked up on, how if you look at the drawing in the government brief, I guess it's opposite page 7, what he pointed to from the prior art, how would the, he was saying you could never in that scenario have the label going into the slot. Well, I'll answer that question first, and then I'll go back to the product. You call the point I'm thinking about? Yeah, no, and I don't think that's correct. I mean, if we look at that figure that's opposing our brief page, I think he was referring to the Extron depiction at A1347. I'm sorry, yeah, it's opposite page 6. In that scenario, what we have is, and you're not seeing the whole caboodle there, what you're seeing is that there's the key, there's the label, and the slot is behind it. I mean, admittedly there the slot is kind of receiving both the key and the label, but the label is still over the slot from the perspective of I have a slot here and I have a label here. There's a space between them. And this brings us back, I promise to go back to your earlier question about the embodiments. If you look at the claim language, the other elements of the claim language, it's eminently consistent with this sort of layering sequential definition that the board has given to the orientation of the slots relative to the keys and the labels. If we look at between, the claim says I have a slot that's between a light source and a key. That's exactly what's depicted in the prior art. I mean, to bring it to this courtroom, this podium is between your honors and myself. I wouldn't use the word between to describe this podium relative to the light source in you. This podium is in between the ceiling in you. Maybe it's below it, maybe it's adjacent to it, but it's not between. You're talking about the language says, I guess in column 10, and each of the slots is positioned between one of the light sources and one of the input device selection keys. Correct. So you're saying that necessarily contemplates in the context of this inventionist linear structure. That's correct. A light label key. It's difficult to see. A light key label, I guess you'd say. Working back to front, light slot key. It's difficult to see how between can mean what they say at the reply brief at the pages 6 to 7, which means located in a different space. There's no common understanding of the word between that means different. We don't disagree that the dictionary definition doesn't include that. It certainly hasn't defined between in his spec to mean adjacent or in a different space. But your argument would result in claim one and, in fact, no claim of the patent, since everything is dependent on claim one, covering the only disclosed embodiment, which is the two different label things. Well, I think that's a tough road to hoe, and you don't need to, to prevail. So I'm not sure why you're choosing to, but go for it. The reason I'm bringing that up, Your Honor, is to the extent that he's advancing a construction of a term, a term is not rooted in the spec. It's not even rooted in the ordinary meaning. I don't know. I think what we're saying is, based on the construction. But we have to come up with a construction of between, and you're telling us to come up with one that excludes, as I understand it. You're saying that the construction you're proffering right now would exclude the only disclosed embodiment. Well, I think it's not limited to that particular embodiment. And even to the extent I submit to this Court, even to the extent that this Court would conclude that there's no way to read the claim in a way that captures that preferred embodiment, while obviously this Court's law suggests that that's odd, there is nothing restricting this Court to saying I have to be able to read this claim in a way that captures the preferred embodiment. And, in fact, if you look at, for example, the... Yeah, but usually if you're going to deviate from that canon of construction, it's because you have later filed claims where clearly something is going on. They're trying to cover more than maybe what they invented. But aren't these simultaneously filed claims? These are original claims. Right. It seems that that canon is even harder for you to overcome when you're talking about originally filed claims. It's fair, Your Honor. It's seemingly an odd thing. And you're right. We don't necessarily... I always hate impossible, but it's fair to say we don't need to go there because, again, what are we really talking about? It's probably your better argument. Yeah, thank you, Your Honor. What we're saying here is he wants to read terms into this claim that are only found in the spec. And we can't necessarily get there using the terms that are even in the claim. And so in that scenario where you have a construction from the PTO that's reasonable in light of the terms of the claim, and it's consistent with the spec for the reasons we explained in our brief, that's the way we should go. Why? Because we want to communicate through the claim. The language of the claim is what the language of the claim is. We can't rewrite it simply because there's a particular embodiment in the spec that he wants to limit himself to. So in that scenario, I submit to you that what the board and the examiner has done here is the correct mode. It's a reasonable interpretation. If he wants to avoid that interpretation to limit his claim to a particular embodiment, he should do it in the claim. Well, SP makes an additional argument, as I understand it, which is, look, this is all you should almost treat it like harmless error because now through clear disclaimer, i.e. prosecution, we have clearly disavowed. So to the extent that you had any concern about whether our claim could have in the past been read more broadly, now the clear disclaimer of this prosecution record has certainly nailed the coffin down tight, so that's an additional reason why perhaps we should accept or the PTO should accept their proposed construction. What is your response to that? The problem with that, Your Honor, is it ignores the re-exam statute. It ignores the rubric we apply in re-exam and ignores why we have re-exam at some level in the first place, which is we don't need to rely on those kind of collateral auxiliary ways of limiting claims because we can do it in the claim. I mean, to be sure, somebody reading the litigation record and the record of this case might say, okay, he's clearly limited himself to that embodiment. The problem is if I just pick up the 794 patent and I read the claim, it doesn't communicate to me that you've limited yourself to the preferred embodiment. That's why Congress provided in Section 305, in re-examination, you can amend your claims and we use the broadest reasonable to drive that policy towards putting the clarity where? Not in the litigation record, in the claim. If there are no further questions, I'll yield the remainder of my time. Thank you, Your Honors. We have about a minute left. Thank you. I'll be brief. I think if you go back and review what Mr. McManus said that you'll find that he didn't answer the question about how labels are received in the slot in the prior art device. The other point I wanted to make is that this isn't a hypothetical situation. This re-examination arose out of a district court litigation where a claim construction order had been entered. And I would submit, yes, there are two different standards that are applicable, but the alleged point at which those two standards diverge wasn't present in this case. There was no invalidity argument made at the district court. The claims were construed for purposes of infringement only in a markment context, and the court didn't say the claims are construed to presume valid. So I think that the fact that the district court found that labels mounted so as to cover the slots was the correct and only supportable construction, I think, is important. And the last point is amending the claims can always be possible, but it has severe consequences of intervening rights in this case. Thank you. Thank you. We thank both counsel. The case is amended.